IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JENNIFER I. HINES, | : | CIVIL ACTION NO. |
| | : | 1:12-CV-2527-TWT-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MIDFIRST BANK and MCCALLA | : | |
| RAYMER, LLC, | : | **FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff Jennifer I. Hines, acting *pro se*, filed the original Complaint in this action in the Superior Court of Henry County on June 18, 2012. On July 20, 2012, Defendants MidFirst Bank ("MidFirst") and McCalla Raymer, LLC ("McCalla Raymer") removed the action to this Court. The action is now before the Court on the Defendants' Motion to Dismiss [2]. For the reasons discussed below, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [2] be **GRANTED**.

Plaintiff is a mortgagor facing foreclosure on her property. Defendant MidFirst is apparently the current holder of the mortgage and security deed on the property, and Defendant McCalla Raymer is the attorney representing MidFirst in the foreclosure process. Plaintiff challenges the Defendants' attempt to foreclose on her property based on an allegedly improper assignment of the mortgage from her original lender to MidFirst and various alleged violations by Defendants as part of the foreclosure

process. As discussed in detail below, the Court finds that Plaintiff has failed to state a plausible claim under any legal theory presented in the Complaint and that all of her claims should be dismissed. Plaintiff asserts legally meritless claims challenging the validity of the assignment of both the security deed and the indebtedness on grounds of "robo-signing" and other alleged improprieties. These well-worn claims have been rejected numerous times before and should be rejected again in this case.

## I.    BACKGROUND

The following allegations are taken from Plaintiff's "Verified Complaint to Enjoin Non-Judicial Foreclosure by Servicer" ("Complaint"). Plaintiff contends that MidFirst is a division of Midland Mortgage, and she claims that it failed to abide by the Georgia foreclosure laws when it foreclosed, or attempted to foreclose on her home located at 121 Ashtonbrook Drive, McDonough, Georgia 30252 (the "Property"). Compl. [1-1] at ¶¶ 1, 3.

Plaintiff alleges in the Complaint that, on or about May 15, 2002, she purchased the Property. *Id.* at ¶ 10. She claims that she refinanced the Property by securing a loan and signing a promissory note ("Note") with First Horizon Home Loans ("First Horizon") on October 26, 2007. *Id.* at ¶ 12, Ex. A. She further claims that she gave First Horizon an interest in the Property as security for the Note, and has attached to

the Complaint a Security Deed dated October 26, 2007 ("Security Deed"), indicating that she granted the Security Deed to Mortgage Electronic Registration Systems ("MERS") as the "nominee" for the Lender, First Horizon. *Id.* at ¶ 13, Ex. B. Plaintiff contends that "MidFirst does not own the indebtedness and has no interest as a lender or assignee in the loan or promissory note between the parties." *Id.* at ¶ 14. According to Plaintiff, "Defendant admits the investor is Ginnie Mae and no assignment exists under this note and MidFirst Bank is just a servicer." *Id.* at ¶ 15, Ex. C. She claims that she does not owe any debt to MidFirst, and MidFirst lacks standing to foreclose on the Property. *Id.* at ¶¶ 16, 18. Plaintiff alleges that the original lender has not transferred the Note to MidFirst and thus, MidFirst "was not the real party in interest on the date this foreclosure action was commenced." *Id.* at ¶¶ 21-24. Plaintiff, however, does not state the date on which "this foreclosure action was commenced." *See id.*

Plaintiff has asserted several claims against both MidFirst and McCalla Raymer. First, Plaintiff asserts a claim for "Deceptive Business Practices Act and Misrepresentation." *Id.* at ¶¶ 27-33. In support of that claim, she alleges that MidFirst "assert that it is the new owner by misrepresenting the debt is owe to Defendant by letter dated January 16, 2012." *Id.* at ¶ 28. She also allege that "[b]oth Defendants

falsely misrepresenting the status of the allege debt being owe to MidFirst Bank." Id. at ¶ 31.

Second, Plaintiff asserts a claim for "Assignment Fraud Creation of False Document." *Id.* at ¶¶ 34-46. In support of that claim, Plaintiff alleges that "MidFirst Bank knew it did not have standing at the time the Assignment of Security Deed was recorded, but proceeded to manufacture an assignment to give the impression it had and does have standing." *Id.* at ¶ 35. She alleges that "[o]n July 26, 2010 Defendant recorded a false assignment in order to assert standing." *Id.* at ¶ 36. She claims that the assignment was executed two years and eight months after the origination of the loan, and that it "shows alleged robo-signer by the name of Sharon Bookout signing as vice-president of Mortgage Electronic Registration Systems." *Id.* at ¶ 38. She claims that "Defendant created false assignment to make it appear that it is the proper party to foreclose." *Id.* at ¶ 46.

Third, Plaintiff asserts a claim for "Attempted Wrongful Foreclosure and Violation of Georgia Foreclosure O.C.G.A. 44-14-162." *Id.* at ¶¶ 47-50. In support of that claim, Plaintiff alleges that she received a notice from McCalla Raymer of a foreclosure sale dated May 9, 2012, "to conduct a [sic] illegal foreclosure schedule for

4

July 3, 2012." *Id.* at 7, ¶ 31.[1] She claims that both MidFirst and McCalla Raymer "participated and engaged in a frivolous conduct to attempt foreclosure and in violation of the Fair Debt credit Practice Act with the intent that would displace Plaintiff from her resident without Defendants having the authority to do so." *Id.* at ¶ 48. She further alleges that "Defendants failed to disclose the correct creditor on Default Notice," and "Defendants [sic] legal advertisement failed to contain the name of the correct secured creditor to foreclose on the property." *Id.* at ¶¶ 49-50.

Fourth, Plaintiff asserts a claim for "Violation of Fair Debt Collection Practices Act." *Id.* at ¶¶ 51-58. In support of that claim, Plaintiff alleges that both MidFirst and McCalla Raymer are "debt collectors" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, "at the time it [sic] became the servicing agent." *Id.* at ¶ 53. She alleges that McCalla Raymer "should be held liable for wrongfully attempting foreclosing on a note that was not properly verified under the law." *Id.* at ¶ 52. She further alleges that McCalla Raymer sent a foreclosure notice to her that was "falsely representing MidFirst Bank" and which notice also failed to name First Horizon as the "original secured creditor." *Id.* at ¶¶ 54-55.

---

[1] Plaintiff has a paragraph numbered "31" between paragraphs numbered 47 and 48 on page 7 of the Complaint. *See* Compl. at 7.

## II.    DISCUSSION

### A.    Standard on a Motion to Dismiss

Defendants have filed Motions to Dismiss, arguing that all the claims asserted in the Complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). Even though a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

Although a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), when a plaintiff has referred to documents in the complaint and such documents are central to the claims, the Court may consider those documents as part of the pleadings in this case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.* at 1205-06; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed

by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

In this case, Plaintiff has referred to several documents in the Complaint, and has attached them to the Complaint; thus, they may be considered as part of the pleadings in this case in resolving the Motion to Dismiss. *See* exhibits attached to Compl. Plaintiff has attached the original Note with First Horizon as Exhibit A, and the Security Deed granted to MERS as Exhibit B. *See* Compl., Ex. A, B. In addition, Plaintiff has attached a letter addressed to her from "Midland Mortgage, a Division of MidFirst Bank" dated November 3, 2011, informing her that "the servicing of [her] loan was transferred to us from [First Horizon] effective July 2, 2008." *Id.*, Ex. C ("November 3, 2011 Letter"). That November 3, 2011 Letter further stated:

> Enclosed please find copies of the original loan documents that obligate you to replay all sums due in accordance with the terms of those documents. Please note that the beneficiary under this mortgage is Mortgage Electronic Registration Systems (MERS) and, as such, no assignment exists. The investor is Ginne Mae . . . . The custodian of the note is MidFirst Bank . . . .

*Id.*

Plaintiff has also attached a letter addressed to her dated January 16, 2012, which states that it is regarding a "Mortgage Loan Transfer Notice." *Id.*, Ex. D ("Transfer Notice"). That Transfer Notice states:

> MidFirst Bank is sending you this Notice as required by federal law. MidFirst Bank is the new owner of your mortgage loan as of 01/13/12. If the transfer of ownership to MidFirst Bank on 01/13/12 has been publicly recorded, it will be located in the recorder's office that maintains the public land records where your property is located.

*Id.*

Plaintiff has also attached an "Assignment of Security Deed" dated June 30, 2010, which indicates that MERS, "acting solely as nominee" for First Horizon, assigned its rights and interests in the Security Deed and the Promissory Note on the Property to MidFirst. *Id.*, Ex. E ("Assignment"). The Assignment indicates that it was signed by Sharon Bookout and Tonya Mathenie, representing that they are signing the Assignment as Vice Presidents of MERS. *Id.* Plaintiff has attached other assignments on other properties purportedly signed by Sharon Bookout as Vice President of MERS. *Id.*, Ex. F.

Plaintiff also attached a letter addressed to her from McCalla Raymer dated April 23, 2012. *Id.*, Ex. H ("Initial Communication Letter"). The Initial Communication Letter stated in part as follows:

> The above-referenced loan has been referred to this law firm for handling.
>
> As of the date of this letter, the amount of debt is $169,543.04. . . .
>
> The debt is owed to MIDLAND MORTGAGE, A DIVISION OF MIDFIRST BANK, who is authorized to receive payment on your loan, but who may not be the recorded holder of the Security Deed. . . .
>
> This law firm is seeking solely to foreclose the creditor's lien on real estate and will not be seeking a personal money judgment against you on its own behalf, which will not affect the creditor's right to do so as allowed by law.

*Id.*

Finally, Plaintiff also attached a letter addressed to her from McCalla Raymer dated May 9, 2012, indicating that it is a "Notice of Foreclosure Sale." *Id.*, Ex. G ("Foreclosure Notice"). That Foreclosure Notice stated in part as follows:

> By letter dated April 23, 2012 (the "Initial Communication Letter") we notified you that the above-referenced loan had been referred to this law firm for handling. . . .
>
> Enclosed is a copy of the Notice of Sale submitted for publication in the legal newspaper. Note that the sale is scheduled for the first Tuesday in July, 2012, and will be held within the legal hours of sale at the Henry County Courthouse. . . .

*Id.* The Foreclosure Notice also informed Plaintiff that the "entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is Midland Mortgage, a division of MidFirst Bank." *Id.*

The Foreclosure Notice that Plaintiff attached to the Complaint also included the "Notice of Sale under Power," which states in part that:

> Under and by virtue of the Power of Sale contained in a Security Deed given by Jennifer I. Hines to Mortage Electronic Registration Systems, Inc., dated October 26, 2007, recorded in Deed Book 10575, Page 134, Henry County, Georgia Records, as last transferred to MidFirst Bank by assignment recorded in Deed Book 11811, Page 232, Henry County, Georgia Records . . . there will be sold at public outcry to the highest bidder for cash before the courthouse door of Henry County, Georgia within the legal hours of sale on the first Tuesday in July, 2012, the [Property] . . . .

*Id.*, Ex. G.

### B. Plaintiff's Claims

#### 1. Deceptive Business Practices Act and Misrepresentation

Plaintiff first asserts a claim for "Deceptive Business Practices Act and Misrepresentation." Compl. at ¶¶ 27-33. She claims that both Defendants "falsely

misrepresent[ed] the status of the allege[d] debt being owe[d] to MidFirst Bank." *Id.* at ¶ 31.

Although it is not entirely clear, construing the Complaint liberally, the Court interprets Plaintiff's claim as one brought under Georgia's Deceptive Trade Practices Act ("DTPA"), O.C.G.A. § 10-1-372(a). Deceptive trade practices include a variety of activities in which someone creates a "likelihood of confusion or of misunderstanding" while "in the course of his business, vocation, or occupation." *Id.* The statute includes as examples of deceptive trade practices, among other things: (1) passing off goods or services as those of another; (2) using deceptive representations or designations of geographic origin in connection with goods or services; (3) representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand; or (4) disparaging the goods, services, or business of another by false or misleading representation of fact. *Id.*

In this case, the undersigned concludes that Plaintiff has failed to allege sufficient facts to state a plausible claim under the DTPA against either MidFirst or McCalla Raymer. Plaintiff has not alleged any facts showing that the Defendants attempted to sell her any goods or services, and Plaintiff otherwise points to no authority to suggest that the statute covers a debtor's rights and obligations under a

mortgage and security deed. The undersigned finds that it does not. Furthermore, although Plaintiff also claims that Defendants engaged in "misrepresentation," the undersigned further finds that she has failed to allege sufficient facts to state a claim for fraud or misrepresentation under Georgia law.

To be actionable as fraud, misrepresentations must be acted upon by the person allegedly defrauded. O.C.G.A. § 23-2-52. To establish a fraud claim under Georgia law, a plaintiff must establish: (1) a false representation by the defendant; (2) scienter; (3) an intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff proximately caused by the reliance. *Next Century Communications Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003); *Smiley v. S & J Invs., Inc.*, 260 Ga. App. 493, 499 (2003). Fraud cannot be based on misrepresentations that the plaintiff could not justifiably rely upon. *GCA Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc.*, 245 Ga. App. 460, 464 (2000). Thus, "a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfulfilled predictions or erroneous conjecture as to future events." *Next Century Communications Corp.*, 318 F.3d at 1027 (*quoting Fuller v. Perry*, 223 Ga. App. 129, 131 (1996)); *see also Equifax, Inc. v. 1600 Peachtree, L.L.C.*, 268 Ga. App. 186, 195 (2004) ("The general rule is that actionable fraud cannot be predicated upon

14

promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made.").

Moreover, a plaintiff must plead fraud with particularity. O.C.G.A. § 9-11-9; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The particularity rule alerts defendants of "the precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotes omitted). The Eleventh Circuit has held that "under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (*citing Fitch v. Radnor Industries, Ltd.*, No. 90-2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990)); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

In a case involving multiple defendants, a plaintiff may not simply "lump together" all the defendants in the allegations of fraud; instead, the complaint must

reasonably notify each defendant of how it supposedly participated. *See Brooks*, 116 F.3d at 1381 (*citing Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Balabanos v. North Am. Inv. Grp., Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988).

In this case, Plaintiff fails to allege the required elements of fraud with particularity. Plaintiff does not allege how or when the Defendants made any false representation, nor does she allege any facts indicating that Defendants harbored any intention to induce her to act or refrain from acting in reliance upon the alleged false representations. Plaintiff's primary argument appears to be based on her contention that the Assignment of the Note and the Security Deed from MERS to MidFirst was fraudulent or forged, and thus, MidFirst was not the true secured creditor on her mortgage. *See* Compl., Ex. E. To the extent Plaintiff is basing her claim of misrepresentation on the Assignment, however, her claim must fail. Plaintiff was not a party to the Assignment, and thus has no standing to challenge it. *See Breus v. McGriff*, 413 S.E.2d 538, 539 (Ga. Ct. App. 1991) ("[S]trangers to the assignment contract have no standing to challenge its validity."). Moreover, Plaintiff has failed to allege any facts indicating that she relied on the Assignment to her detriment. *See*

*Jackman v. Hasty*, Civil Action No. 10-cv-2485-RWS, 2011 WL 854878, *5 (N.D.Ga., March 08, 2011) (dismissing similar claim of fraud premised on alleged false signatures of purported MERS officers because "Plaintiff has not alleged that she relied upon the purportedly false signatures of Hasty and Krueger to her detriment.").

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss [2] be **GRANTED** with respect to Plaintiff's claim for "Deceptive Business Practices Act and Misrepresentation."

2.      Assignment Fraud and Creation of False Document

Plaintiff has also asserted a claim entitled "Assignment Fraud Creation of False Document." Compl. at ¶¶ 34-46. Plaintiff claims that "MidFirst Bank knew it did not have standing at the time the Assignment of Security Deed was recorded, but proceeded to manufacture an assignment to give the impression it had and does have standing." *Id.* at ¶ 35. She alleges that "[o]n July 26, 2010 Defendant recorded a false assignment in order to assert standing." *Id.* at ¶ 36. She claims that the assignment was executed two years and eight months after the origination of the loan, and that it "shows alleged robo-signer by the name of Sharon Bookout signing as vice-president of Mortgage Electronic Registration Systems." *Id.* at ¶ 38. She claims that "Defendant

created false assignment to make it appear that it is the proper party to foreclose." *Id.* at ¶ 46.

As discussed above, Plaintiff cannot base her claim of fraud on her allegation that the Assignment was forged or fraudulent, because she was not a party to the Assignment and she does not allege any facts indicating that she relied on the Assignment to her detriment. Furthermore, courts have repeatedly dismissed fraud claims premised on so-called "robo-signing," because such allegations generally do not establish, among other things, that the individuals who purported to sign did not actually sign and/or misrepresented their authority to sign. *See, e.g., Maheu v. Bank of America, N.A.*, No. 12–cv–508,2012 WL 1744536, *6-*7 (D. Md. May 14, 2012) (gathering authority). Thus, Plaintiff fails to assert a claim for "assignment fraud," with particularity or otherwise.

Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss [2] be **GRANTED** with respect to Plaintiff's claim of "assignment fraud" and "creation of false document."

3. Attempted Wrongful Foreclosure

Plaintiff asserts a claim against both MidFirst and McCalla Raymer for a attempted wrongful foreclosure under Georgia law. Compl. at ¶¶ 47-50. Plaintiff claims that Defendants "failed to disclose the correct creditor on Default Notice," and "Defendants [sic] legal advertisement failed to contain the name of the correct secured creditor to foreclose on the property." *Id.* at ¶¶ 49-50.

To state a claim for wrongful attempted foreclosure under Georgia law, a plaintiff must allege sufficient facts to state a plausible claim that the party attempting to foreclose made a "knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition" and that she incurred damages as a direct result of such publication. *See Mayrant v. Deutsche Bank Trust Co. Americas*, Civil Action No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *2 (N.D. Ga. May 17, 2011) (Thrash, J.) (*quoting Aetna Finance Co. v. Culpepper*, 171 Ga. App. 315, 319 (1984)).

Plaintiff in this case has failed to state a plausible claim for wrongful foreclosure because she has failed to allege sufficient facts to establish that either MidFirst or McCalla Raymer made a "knowing and intentional publication of untrue and derogatory information" or that she suffered damages as a result. Plaintiff does

not appear to allege in the Complaint that she was not actually in default on her mortgage. Instead, she alleges that the Assignment from MERS to MidFirst was somehow forged or fraudulent, and thus, her original lender First Horizon was the actual secured creditor, not MidFirst. For the reasons explained above, Plaintiff cannot challenge the validity of the Assignment when she was not a party to the Assignment. Furthermore, Plaintiff has not alleged that she suffered any damages as a result of the alleged "untrue and derogatory information" that the Defendants made in the Notice of Sale Under Power.

Although Plaintiff's claim is solely for wrongful attempted foreclosure, the undersigned finds further that she has failed to state a claim for wrongful foreclosure. In order to state a claim for wrongful foreclosure under Georgia law, Plaintiff must allege sufficient facts to establish a plausible claim that the lender or creditor owed it a legal duty, the lender or creditor breached that duty, there is a causal connection between the breach of duty and injury sustained, and the plaintiff incurred damages. *See All Fleet Refinishing, Inc. v. W. Ga. Nat'l Bank*, 280 Ga. App. 676, 681 (2006). Plaintiff has failed to allege that a foreclosure sale of the Property actually occurred, nor has she otherwise alleged any facts indicating that she suffered damages as a result of any breach of an alleged duty by either MidFirst or McCalla Raymer.

Also, Plaintiff does not allege facts plausibly suggesting that MidFirst lacks a valid security interest to foreclose upon. The exhibits attached to the Complaint state that MidFirst holds the indebtedness and the Security Deed. While Plaintiff alleges that McCalla Raymer's Foreclosure Notice "failed to disclose the correct creditor on Default Notice," that allegation is contradicted by the exhibits Plaintiff attaches. *See* Compl. at ¶ 49, Ex. E, G, H. The record shows that Plaintiff was previously informed that MidFirst had acquired the mortgage loan. Compl., Ex. D. And the Foreclosure Notice reiterated that McCalla Raymer was initiating the foreclosure on behalf of MidFirst, which was identified as the entity with authority to negotiate the loan. Compl. Ex. G, H. Especially in light of these documents Plaintiff attached to the Complaint, Plaintiff fails to allege facts plausibly showing that MidFirst somehow lacked "standing" to foreclose on the Property.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [2] be **GRANTED** with respect to Plaintiff's claim of attempted wrongful foreclosure.

4. Fair Debt Collections Practices Act

Finally, Plaintiff has asserted a claim against both Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Compl. at ¶¶ 51-58. Plaintiff claims that both MidFirst and McCalla Raymer are "debt collectors" under the FDCPA. She alleges that McCalla Raymer "should be held liable for wrongfully attempting foreclosing on a note that was not properly verified under the law." *Id.* at ¶ 52. She further alleges that McCalla Raymer sent a foreclosure notice to her that was "falsely representing MidFirst Bank" and which notice also failed to name First Horizon as the "original secured creditor." *Id.* at ¶¶ 54-55. She claims that the notice contains "false, deceptive and misleading representation." *Id.* at ¶ 56.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Specifically, it "prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make

certain disclosures." *Acosta v. Campbell*, 309 Fed. App'x 315, 319 (11th Cir. 2009) (*citing* 15 U.S.C. §§ 1692d, 1692e, 1692f).

In order to state a claim under the FDCPA, a plaintiff must allege sufficient facts to assert a plausible claim that a defendant is a debt collector as that term is defined in the statute and that it engaged in some act prohibited by the FDCPA, or failed to disclose information required by the FDCPA, in attempting to collect from Plaintiff on a consumer debt. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp.2d 1355, 1360-61 (S.D. Fla. 2000). It is well established that the FDCPA applies only to "debt collectors" and not to creditors or mortgage servicers. *See* 15 U.S.C. § 1692a(6); see also *Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (M.D. Fla. April 9, 2012) (the "critical element is whether the defendant is a debt collector" as defined under the statute).

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third party is collecting or attempting to collect such debts. For the purpose of section 1692f(6) . . . , such term also includes any person who uses an instrumentality of interstate commerce or the mails in any

> business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6). The statute also excludes from the definition of "debt collector" altogether any person who acquires a debt before it is in default. 15 U.S.C. § 1692a(6)(F). A plaintiff's ability to properly classify a defendant as a debt collector is critical because the "FDCPA applies only to 'debt collectors' whose conduct involves the collection a debt." *Evans v. Appalachian Mountain Serv., Inc.,* No. CV611-037, 2011 WL 3739552, at *2 (S.D. Ga. Aug. 24, 2011) (internal citation omitted).

In this case, although Plaintiff makes a conclusory allegation that MidFirst is a "debt collector," she has failed to allege sufficient facts to establish a plausible claim that MidFirst is a debt collector under the terms of the FDCPA or that it engaged in debt collection activity that allegedly violated the statute. The Eleventh Circuit has held that foreclosing on one's own security interest is not "debt collection" except for limited purposes under the FDCPA, 15 U.S.C. § 1692f(6). *See Warren v. Countrywide Home Loans*, 342 Fed. Appx. 458, 460 (11th Cir. 2009) ("the plain language of the FDCPA supports the district court's conclusion that foreclosing on a security interest is not debt collection activity for purposes of § 1692g" and "an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real

property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)" (internal citations omitted)); *Acosta v. Campbell*, 2006 WL 3804729, at *4 (M.D. Fla. Dec.22, 2006) ("[n]early every court that has addressed the question has held that foreclosing on a mortgage is not a debt collection activity for the purposes of the FDCPA").

Assuming that Plaintiff has alleged sufficient facts to demonstrate that McCalla Raymer could be considered a "debt collector" under the FDCPA, the undersigned nevertheless concludes that Plaintiff has failed to state a plausible claim that McCalla Raymer violated the FDCPA. As discussed above, an enforcer of a security interest is not considered a "debt collector" for all purposes under the FDCPA, but such an entity is considered a "debt collector" under the limited provisions of 15 U.S.C. § 1692f(6)(A). *See* 15 U.S.C. § 1692f(6)(A) (defining as a violation of this section "threatening to take any nonjudicial action to effect dispossession . . . of property if . . . there is no present right of possession of the property claimed as collateral through an enforceable security interest"). Thus, Plaintiff may assert a plausible claim under that section if she has alleged sufficient facts to demonstrate that McCalla Raymer threatened to foreclose on the Property at a time when there was no "present right of possession" through "an enforceable security interest."

The Assignment Plaintiff attached to the Complaint reflects on its face that MERS, the party to whom Plaintiff originally granted the Security Deed as the nominee for the original lender First Horizon, assigned the Security Deed and the underlying indebtedness reflected in the Promissory Note to MidFirst on June 30, 2010. Assignment, Compl., Ex. E. Although Plaintiff does not allege the date on which either MidFirst or McCalla Raymer "threatened" to foreclose on the Property, the documents she attached to the Complaint indicate that McCalla Raymer sent her the Initial Communication Letter on April 23, 2012, and the Foreclosure Notice on May 9, 2012. *See* Comp., Ex. G, H.

Thus, the undisputed facts, as alleged in the Complaint and indicated in the exhibits that are central to the Plaintiff's claims, establish that the Promissory Note and Security Deed on the Property were assigned from MERS to MidFirst in 2010, and that McCalla Raymer first notified Plaintiff of its intent to foreclose on the Property on behalf of MidFirst in 2012. Thus, because the exhibits demonstrate that MidFirst held an enforceable security interest at the time that Defendants notified Plaintiff of the planned foreclosure, and Plaintiff does not allege facts plausibly showing otherwise, Plaintiff has failed to allege sufficient facts to state a plausible claim that either MidFirst or McCalla Raymer violated 15 U.S.C. § 1692f(6)(A).

Plaintiff also does not allege any facts to assert a plausible claim that either MidFirst or McCalla Raymer violated any other section of the FDCPA, because, as discussed above, foreclosing on an enforceable security interest is not "debt collection activity" under the statute, except for the specific provision of 15 U.S.C. § 1692f(6)(A). Thus, the undersigned finds that Plaintiff has failed to state a plausible claim for relief against either Defendant under the FDCPA. Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss [2] be **GRANTED** with respect to the Plaintiff's claim under the FDCPA.

When a complaint fails to state a claim for relief, a district court may grant a plaintiff leave to amend subject to reasonable conditions and limitations. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006). The leniency afforded to *pro se* litigants, however, "does not give a court license to serve as a *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted). A district court need not allow an amendment when there has been undue delay, when allowing an amendment would cause undue prejudice to the opposing party, or when an amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

When a *pro se* plaintiff has failed to allege sufficient facts to state a claim, in deference to the plaintiff's *pro se* status, a court may also order that an action be dismissed without prejudice rather than with prejudice. The undersigned concludes, however, that dismissing most of Plaintiff's claims without prejudice to allow her to re-file those claims would likely be futile because the undisputed facts demonstrate that Plaintiff cannot state a claim.

## III.   RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Defendants' Motions to Dismiss [2] be **GRANTED** and that Plaintiff's Complaint be **DISMISSED** in its entirety.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 8th day of January, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE